# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| DERRYN NICOLE JONES, et al., <br> Plaintiffs, <br><br> vs. <br><br> U.S. BANK NATIONAL ASSOCIATION, et al., <br> Defendants. | Case No. 1:16-cv-778 <br> Black, J. <br> Litkovitz, M.J. <br><br><br> **REPORT AND** <br> **RECOMMENDATION** |

Pro se plaintiffs Derryn and Dwight Jones bring this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 et seq.; and Ohio state law. This matter is before the Court on the motion to dismiss of defendants U.S. Bank, N.A., as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSMS Mortgage Backed Pass Through Certificates Series 2006-2 ("U.S. Bank"), Wells Fargo Bank, N.A. d/b/a America's Servicing Company ("Wells Fargo"), Thompson Hine, LLP, and Scott A. King (Doc. 35) and the motion to dismiss of defendants Lerner, Sampson & Rothfuss and Matthew I. McKelvey (Doc. 37). Plaintiffs have not responded to the motions to dismiss.[1]

## I. Facts and Procedural Background[2]

In December 2005, plaintiff Derryn Jones executed a note to MortgageIT, Inc. in return for a home loan in the principal amount of $123,200.00. (Note, Exh. A to Exh. A-2, Doc. 16-2 at

---

[1] Plaintiffs have sought numerous extensions of time to respond to the pending motions to dismiss. (*See* Docs. 39, 40, 50). Plaintiffs have also delayed these proceedings by filing motions to strike the motions to dismiss. (*See* Docs. 41, 42). In a March 9, 2017 Order granting plaintiffs' most recent motion for an extension of time until March 24, 2017, the Court noted that "[n]o further extensions of time will be granted absent extenuating circumstances." (Doc. 53 at 2). Plaintiffs have not filed any responses to the motions to dismiss since the March 9 Order, nor have they identified any extenuating circumstances preventing them from doing so.

[2] Plaintiffs have attached to their amended complaint and defendants have attached to their briefs documents from the related foreclosure case in the Hamilton County Court of Common Pleas and related bankruptcy cases in the United States Bankruptcy Court for the Southern District of Ohio. The Court may take judicial notice of these documents without converting defendants' motions to dismiss into motions for summary judgment. *See New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (holding that a court "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice"); Fed. R. Evid. 201(c)(2) (providing that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information").

6-9).[3] Plaintiffs granted MortgageIT a mortgage on their residence to secure the note. (Mortgage, Exh. B to Exh. A-2, Doc. 16-2 at 10-27). In January 2012, the mortgage was assigned to "US Bank National Association, as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2." (Corporate Assignment of Mortgage, Exh. C to Exh. A-2, Doc. 16-2 at 28-30).

In March 2012, U.S. Bank filed a foreclosure complaint against plaintiffs in the Hamilton County, Ohio Court of Common Pleas. (Complaint in Foreclosure, Exh. A-2, Doc. 16-2 at 2-5). U.S. Bank was represented on the foreclosure complaint by Matthew I. McKelvey, an attorney with Lerner, Sampson & Rothfuss. (*See id.* at 5).

In June 2012, plaintiffs filed a pro se bankruptcy petition under Chapter 13. (*See* Docket Sheet for Case No. 1:12-bk-13483, Exh. D, Doc. 13-4 at 1).[4] The petition was dismissed in August 2012 for failure to file information. (*See id.*).

In October 2012, plaintiffs filed an amended answer and counterclaim in the foreclosure action. (Amended Answer, Affirmative Defenses and a Counterclaim for Recoupment, Exh. F-1, Doc. 35-1 at 1-37). In this filing, plaintiffs raised a variety of arguments concerning U.S. Bank's lack of standing or capacity and also alleged that Lerner, Sampson & Rothfuss had violated the FDCPA by failing to verify the amount of the debt. (*See generally id.* at 8-34).

In November 2012, U.S. Bank moved to dismiss the counterclaim. (Motion to Dismiss, Exh. F-2, Doc. 35-2). U.S. Bank was represented on the motion to dismiss by Scott A. King, an attorney with Thompson Hine. (*See id.* at 2).

---

[3] Defendants U.S. Bank, Wells Fargo, Thompson Hine, and Scott King filed numerous exhibits with their motion to dismiss plaintiffs' original complaint (Doc. 16). In their motion to dismiss the amended complaint, these defendants have not refiled these exhibits and they still cite to the exhibits from the original motion to dismiss.

[4] Defendants Lerner, Sampson & Rothfuss and Matthew McKelvey filed numerous exhibits with their motion to dismiss plaintiffs' original complaint (Doc. 13). In their motion to dismiss the amended complaint, these defendants have not refiled these exhibits and they still cite to the exhibits from the original motion to dismiss.

In April 2013, plaintiff Dwight Jones again filed a pro se bankruptcy petition under Chapter 13. (*See* Docket Sheet for Case No. 1:13-bk-11966, Exh. E, Doc. 13-5 at 1). The petition was dismissed in August 2013 for failure to make plan payments. (*See id.*).

In June 2013, the mortgage was assigned from "US Bank National Association, as Trustee for CSMC Mortgage Backed Pass-Through Certificates, Series 2006-2, by Wells Fargo Bank, N.A., as Their Attorney-in-Fact" to "U.S. Bank National Association, as Trustee for Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2." (Corporate Assignment of Mortgage, Exh. F, Doc. 13-6 at 1).

In February 2014, plaintiff Dwight Jones filed an affidavit in opposition to a motion for summary judgment in the state foreclosure action. (Affidavit in Support of Opposition to Renewed Motion for Summary Judgment and Specific Negative Averment, Exh. A-3, Doc. 16-3). In relevant part, plaintiff asserted that due to fraud related to the assignment of the loan to U.S. Bank, the state court lacked jurisdiction over the foreclosure action. (*See id.* at 7). Plaintiff attached a Notice of Revocation of Power of Attorney, in which plaintiffs asserted that they had discovered "various elements of fraud, fraudulent inducement, fraudulent misrepresentation, entrapment, and nondisclosure" on the part of U.S. Bank and Lerner, Sampson & Rothfuss, among others. (*See* Notice of Revocation of Power of Attorney, Exh. O to Exh. A-3, Doc. 16-3 at 73).

In March 2014, the magistrate in the state foreclosure action found that the note was properly assigned to U.S. Bank, that the note and mortgage were valid, and that U.S. Bank had standing to foreclose. (Magistrate's Decision (Foreclosure), Exh. A-4, Doc. 16-4 at 2-4). In September 2014, the state court adopted the magistrate's decision and entered summary judgment in U.S. Bank's favor in the foreclosure action. (Entry Granting Motion for Summary Judgment and Decree in Foreclosure, Exh. A-5, Doc. 16-5). The state court's order was drafted

3

by Mr. McKelvey of Lerner, Sampson & Rothfuss. (*See id.* at 1, 5). The order indicated that this draft had been "submitted" to plaintiffs before it was filed with the court. (*See id.* at 5).

Plaintiffs appealed the foreclosure action to the First District Ohio Court of Appeals. (*See* Entry of Dismissal, Exh. B, Doc. 16-6). The First District dismissed the appeal for lack of prosecution in January 2015 because plaintiffs failed to file an appellate brief. (*See id.*). Plaintiffs filed an appeal to the Supreme Court of Ohio, which declined jurisdiction in July 2015. (*See* Case Information for Case No. GEN-2015-0491, Exh. C, Doc. 16-7).

Meanwhile, Ms. Jones again filed a pro se bankruptcy petition under Chapter 13 in December 2014. (*See* Docket Sheet for Case No. 1:14-bk-14978, Exh. J, Doc. 13-10 at 1). The bankruptcy court dismissed the petition in March 2015 for Ms. Jones' failure to pay the filing fee. (*See id.*).

On August 24, 2015, Ms. Jones filed another pro se bankruptcy petition under Chapter 13. (*See In re Derryn Jones*, CM/ECF for U.S. Bankr. Court for S.D. Ohio, Case No. 1:15-bk-13268, Doc. 1). Edward J. Boll of Lerner, Sampson & Rothfuss entered an appearance and a request for notice on behalf of Wells Fargo. (*Id.*, Doc. 18).

On December 7, 2015, Ms. Jones filed an adversary proceeding in the bankruptcy case against Wells Fargo and U.S. Bank. (*See* Adversary Proceeding Complaint, Exh. D-2, Doc. 16-9). In this complaint, Ms. Jones alleged that U.S. Bank violated the FDCPA by trying to collect on her home loan debt when the assignment of the mortgage to U.S. Bank was "materially false and misrepresented that Defendants' clients own a note and mortgage of plaintiff's." (*Id.* at 9). Scott King of Thompson Hine appeared on behalf of U.S. Bank and filed a motion to dismiss. (*See Jones v. Wells Fargo Bank, N.A.*, CM/ECF for U.S. Bankr. Court for S.D. Ohio, Case No. 1:15-ap-1116, Doc. 5). On January 4, 2016, the bankruptcy court dismissed Ms. Jones' bankruptcy petition with prejudice finding that the petition was not filed in good faith. (Order

4

Granting Motion to Dismiss, Exh. D-4, Doc. 16-11 at 1-2). In dismissing Ms. Jones' petition, the bankruptcy court barred Ms. Jones "or anyone having or purporting to have a possessory interest" in plaintiffs' residence from filing for bankruptcy protection for a period of 180 days. (*Id.* at 2). On January 7, 2016, the bankruptcy court dismissed the complaint in the adversary proceeding based on the dismissal of the primary bankruptcy case. (*See Jones*, Case No. 1:15-ap-1116, Doc. 7).

On January 26, 2016, plaintiffs filed a mandamus action in the Supreme Court of Ohio against Thompson Hine, Mr. King, Lerner, Sampson & Rothfuss, and Mr. McKelvey. (*See* Docket Sheet for Case No. 2016-0124, Exh. M, Doc. 13-13 at 1). The Supreme Court of Ohio dismissed the action in May 2016 and denied plaintiffs' motion for reconsideration in June 2016. (*See id.* at 2-3).

On July 26, 2016, Mr. Jones filed a pro se bankruptcy petition under Chapter 13. (*See In re Dwight Jones*, CM/ECF for U.S. Bankr. Court for S.D. Ohio, Case No. 1:16-bk-12757, Doc. 1). On October 26, 2016, the bankruptcy court dismissed Mr. Jones' bankruptcy case for failure to comply with court orders and barred plaintiffs from filing for bankruptcy protection for a period of 180 days. (Order Dismissing Case, Exh. E-2, Doc. 16-13).

Against this procedural background, plaintiffs filed the instant action on July 25, 2016. (Doc. 1). In November 2016, plaintiffs filed the amended complaint that is the subject of the instant motions to dismiss. (Doc. 27).

**II. Legal Standard**

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has satisfied Rule 12(b)(6) if he has pled enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. Specific facts are not necessary and the pleader is only required to give fair notice of the claim and the grounds upon which it rests. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). The Court must hold pro se pleadings to less stringent standards than those prepared by attorneys and must liberally construe them when determining whether they fail to state a claim. *See, e.g., Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).

**III. The FDCPA Claim**

In the amended complaint, plaintiffs first allege that defendants have violated the FDCPA. (*See* Doc. 27 at ¶¶ 63-86). Specifically, plaintiffs allege that U.S. Bank violated the FDCPA during the August 2015 bankruptcy proceedings by falsely stating that the U.S. Bank entity that held the mortgage before the June 2013 assignment was the same as the U.S. Bank entity that held the mortgage after that assignment. (*See id.* at ¶ 64). Plaintiffs allege that Wells Fargo violated the FDCPA during the August 2015 bankruptcy proceedings by false stating that it was a creditor when it was actually the master servicer of plaintiffs' home loan. (*See id.* at ¶ 65). Plaintiffs allege that Lerner, Sampson & Rothfuss and Thompson Hine violated the FDCPA during the August 2015 bankruptcy proceedings by knowingly filing false papers indicating that the two U.S. Bank entities were the same entity and that Wells Fargo was a creditor. (*See id.* at ¶ 66-67). Plaintiffs allege that these four defendants violated 15 U.S.C. § 1692d of the FDCPA by engaging "in conduct the natural consequence of which is to harass, oppress, or abuse the Plaintiffs in connection with the [August 2015] Bankruptcy." (*Id.* at ¶ 68). Plaintiffs assert that these defendants have no legal right to collect on Ms. Jones' home loan debt because there was never a valid assignment to U.S. Bank or Wells Fargo. (*Id.* at ¶ 69). Plaintiffs assert that

6

defendants violated 15 U.S.C. § 1692e(2) and (10) by making "knowing and intentional misrepresentations or misleading and/or false representations as to the legal status, character, and/or amount of the debt." (*Id.* at ¶ 71). Plaintiffs allege that to their knowledge and belief, U.S. Bank and Wells Fargo do not have and are unable to acquire or produce the promissory note. (*Id.* at ¶ 72). Plaintiffs allege that because the debt is not valid, defendants violated the FDCPA by reporting it to credit bureaus. (*See id.* at ¶¶ 80-83).

In their motions to dismiss, defendants argue that the FDCPA claim is barred by the doctrines of res judicata and collateral estoppel. (Doc. 35 at 9-11, 13; Doc. 37 at 6-9).[5] Defendants further argue that plaintiffs have failed to state a claim for relief under the FDCPA because defendants did not seek to "collect a debt" from Ms. Jones in the August 2015 bankruptcy proceedings and did not make any false or misleading statements during those proceedings. (Doc. 35 at 15; Doc. 37 at 11).

*1. Issue Preclusion*

In considering preclusion doctrines, "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). "Under Ohio law, the doctrine of res judicata consists of the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citation and quotation marks omitted).

In applying issue preclusion, the Sixth Circuit has explained that the following requirements must be met:

---

[5] Page citations refer to the page numbers provided by CM/ECF.

7

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have *resulted in a final judgment on the merits*; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009) (citing *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)).

*Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (emphasis in original). When a defendant "is the party invoking issue preclusion, defensive collateral estoppel, rather than offensive collateral estoppel applies." *Id.* "Mutuality between the parties is not required in defensive collateral estoppel cases so long as 'the plaintiff has had a full and fair opportunity to litigate the contested issue previously.'" *Id.* at 1098-99 (quoting *McAdoo v. Dallas Corp.*, 932 F.2d 522, 523 (6th Cir. 1991)).

Here, the issue underlying plaintiffs' FDCPA claim is whether there was a valid assignment of the mortgage to U.S. Bank such that U.S. Bank could foreclose on plaintiffs' residence. Plaintiffs argue that there was not a valid assignment and, thus, the parties violated the FDCPA during the August 2015 bankruptcy proceedings by falsely stating that the mortgage had been assigned to U.S. Bank. (*See generally* Doc. 27 at ¶¶ 63-86). However, plaintiffs are collaterally estopped from making this argument.

As to the first requirement for application of collateral estoppel, the "precise issue" underlying plaintiffs' FDCPA claim was "raised and actually litigated" in the earlier state foreclosure action. *Georgia-Pacific Consumer Prods. LP*, 701 F.3d at 1098. Specifically, in the state foreclosure proceedings, plaintiffs raised a variety of arguments concerning U.S. Bank's lack of standing or capacity, including the contention that the assignment to U.S. Bank was not valid. (*See generally* Exh. F-1, Doc. 35-1 at 8-34). Further, plaintiffs asserted that due to fraud related to the assignment of the loan to U.S. Bank, the state court lacked jurisdiction over the

foreclosure action. (Exh. A-3, Doc. 16-3 at 7). As to the second requirement, the state court's determination that the assignment was valid was "necessary to the outcome" of the foreclosure proceedings as it was critical to the state court's determination that U.S. Bank had standing to foreclose. *Georgia-Pacific Consumer Prods. LP*, 701 F.3d at 1098. In granting summary judgment to U.S. Bank, the state court explicitly rejected plaintiffs' arguments by finding that the assignment to U.S. Bank was proper, the note and mortgage were valid, and U.S. Bank had standing to foreclose. (Exh. A-4, Doc. 16-4 at 2-4). As to the third requirement, the state court proceedings resulted in a final judgment on the merits, namely, a grant of summary judgment in favor of U.S. Bank. *See Georgia-Pacific Consumer Prods. LP*, 701 F.3d at 1098; (Exh. A-5; Doc. 16-5). As to the fourth requirement, plaintiffs received "a full and fair opportunity to litigate the issue" in the foreclosure proceedings. *Georgia-Pacific Consumer Prods. LP*, 701 F.3d at 1098. Specifically, plaintiffs raised their arguments concerning the assignment to U.S. Bank in multiple filings considered by the state court before it granted summary judgment to U.S. Bank. (*See* Exh. A-3, doc. 16-3 at 7; Exh. F-1, Doc. 35-1 at 8-34). Finally, the Court notes that because defendants are invoking collateral estoppel, defensive collateral estoppel applies and all defendants may invoke issue preclusion to bar plaintiffs' FDCPA claim even though U.S. Bank is the only defendant who was also a party in the state foreclosure proceedings. *See Georgia-Pacific Consumer Prods. LP*, 701 F.3d at 1098-99.

Based on the foregoing, plaintiffs are collaterally estopped from advancing an FDCPA claim premised on statements in the August 2015 bankruptcy proceedings that the assignment to U.S. Bank was invalid.

### 2. Failure to State a Claim

This leaves as a possible basis for FDCPA liability only plaintiffs' allegation that Wells Fargo, Thompson Hine, and Lerner, Sampson & Rothfuss falsely stated in the August 2015

9

bankruptcy proceedings that Wells Fargo was a creditor. (*See* Doc. 27 at ¶¶ 65-67). After Ms. Jones filed the August 2015 bankruptcy petition, Mr. Boll of Lerner, Sampson & Rothfuss entered an appearance on behalf of "Wells Fargo Bank, N.A., Creditor" seeking service of notices and papers to be served in the proceedings. (*See In re Derryn Jones*, CM/ECF for U.S. Bankr. Court for S.D. Ohio, Case No. 1:15-bk-13268, Doc. 18). Ms. Jones filed an objection to this notice of appearance, arguing that Wells Fargo was not a "creditor" as defined in 11 U.S.C. § 101(10).[6] (*Id.*, Doc. 22 at 1). Kerri Bruckner, an attorney for Lerner, Sampson & Rothfuss, filed a response on behalf of Wells Fargo to Ms. Jones' objection. (*Id.*, Doc. 25). In its response, Wells Fargo stated that it is the mortgage servicer for U.S. Bank. (*Id.* at 1-2). In October 2015, the bankruptcy court overruled Ms. Jones' objection because a "Creditor's Notice of Appearance indicates that it is a party to the present action and does not indicate that the Creditor is a Creditor under the meaning of 11 U.S.C. § 101(10)." (*Id.*, Doc. 31 at 2).

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" violates the FDCPA. 15 U.S.C. § 1692e(10).

Here, plaintiffs fail to state an FDCPA claim premised on Wells Fargo holding itself out as a "creditor" in the August 2015 bankruptcy proceedings. Specifically, defendants did not make any false representations concerning Wells Fargo's status. As the servicer for plaintiffs' loan, Wells Fargo was a party to the bankruptcy proceedings entitled to notice. (*See* Exh. F, Doc. 13-6 at 1; Exh. H, Doc. 27 at 54) (indicating that Wells Fargo was "attorney-in-fact" and "Servicer, Master Servicer and Trust Administrator" for U.S. Bank). Moreover, to state a claim

---

[6] Under 11 U.S.C. § 101(10), the term "creditor" means: "(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or (C) entity that has a community claim."

under the FDCPA, defendants' statements must have been made "to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). *See also Clark v. Lender Processing Servs.*, 562 F. App'x 460, 465-66 (6th Cir. 2014) ("To state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity.") (citing *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459-60 (6th Cir. 2013)). Courts have found that in the context of bankruptcy proceedings, a debt collector attempts to collect a debt by filing a proof of claim. *See, e.g., In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) ("Precedent and common sense dictate that filing a proof of claim is an attempt to collect a debt."); *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1261 (11th Cir. 2014) (finding that filing of a proof of claim was collection activity for purposes of FDCPA because it was an effort to obtain payment of a debt by a legal proceeding). In contrast, the Court's research has not revealed any decisions finding that a party who does not file a proof of claim nevertheless engages in debt collection activity merely by entering an appearance in bankruptcy proceedings. Here, plaintiffs have alleged that Wells Fargo's notice of appearance was improper, but have not alleged that Wells Fargo engaged in any debt collection activity (e.g., by filing a proof of claim) in the August 2015 bankruptcy proceedings.

Based on the foregoing, plaintiffs have failed to state an FDCPA claim related to Wells Fargo's entering an appearance as a "creditor" in the August 2015 bankruptcy proceedings.

## IV. The RICO Claim

Plaintiffs next allege that defendants violated the RICO Act by executing an invalid assignment of the loan. (*See* Doc. 27 at ¶¶ 87-101). Plaintiffs allege that this assignment constituted wire and mail fraud. (*See generally id.*).

To state a claim under the RICO statute, "a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *In re*

11

*ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). "Racketeering activity" includes "numerous so-called predicate acts, including, 'any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud).'" *Id.* (quoting 18 U.S.C. § 1961(1)).

Here, plaintiffs allege in a conclusory fashion that defendants committed wire and mail fraud related to the assignment of plaintiffs' mortgage loan. (*See* Doc. 27 at ¶¶ 88, 90, 92-93, 95). Plaintiffs have failed to allege with specificity what particular actions each defendant undertook that constituted wire and/or mail fraud. (*See id.* at ¶¶ 87-101). Thus, they have failed to sufficiently allege racketeering activity to support a RICO claim. *See Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012) ("When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of [Fed. R. Civ. P.] 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'") (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)).

Further, plaintiffs' allegations concern only the assignment of their mortgage to U.S. Bank. Allegations involving the assignment of a single mortgage loan are insufficient to establish a pattern of racketeering activity. "A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other." *Id.* at 409 (citing 18 U.S.C. § 1961(5)). "In order to show a 'pattern' of racketeering activity, a plaintiff must show 'that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989)). Plaintiffs' allegations concerning the assignment of a single mortgage loan do not suffice. *See*

12

*Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 805 (6th Cir. 2015) (finding that a single scheme with a single victim cannot meet the standard for RICO liability); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) ("We do not find that a defendant who engages in several different forms of fraud for a single purpose, to defraud a single victim through activities surrounding one construction project, without more, has engaged in more than one criminal scheme."); *Pethtel v. Wash. Cty. Sheriff's Office*, No. 2:06-cv-799, 2007 WL 2359765, at *13 (S.D. Ohio Aug. 16, 2007) (finding that complaint did not sufficiently allege a pattern of racketeering activity where allegations "clearly focus on a single scheme with a single injury to a single victim").

Based on the foregoing, plaintiffs have failed to state a claim for relief under the RICO Act.

## V. State Law Fraud Claims

Plaintiffs allege that Lerner, Sampson & Rothfuss committed intrinsic and extrinsic fraud by submitting a draft order to the state court in the foreclosure proceedings that misled the court to believe that plaintiffs consented to it. (Doc. 27 at ¶¶ 109, 113). Plaintiffs allege that Thompson Hine and Lerner, Sampson & Rothfuss committed fraud by filing for judgment in the foreclosure proceedings even though they knew that the assignment to U.S. Bank was not valid. (*See id.* at ¶¶ 110-11, 114-15).

In Ohio, the elements of common law fraud are:

(a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
(d) with the intent of misleading another into relying upon it,
(e) justifiable reliance upon the representation or concealment, and
(f) a resulting injury proximately caused by the reliance.

*Burr v. Bd. of Cty. Comm'rs of Stark Cty.*, 491 N.E.2d 1101, 1105 (Ohio 1986) (quoting *Cohen v. Lamko, Inc.*, 462 N.E.2d 407 (Ohio 1984)).

13

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy this rule, a plaintiff must "at a minimum allege the time, place and content of the misrepresentation upon which he . . . relied; the fraudulent intent of the defendant; and the injury resulting from the fraud." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988). *See also United States v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 642 (6th Cir. 2003) (explaining that Rule 9(b) requires a plaintiff to state with particularity the circumstances of fraud, "i.e., the time, place, and substance").

As to plaintiffs' allegation concerning the draft order, the state court's order granting summary judgment in U.S. Bank's favor in the foreclosure action was drafted by Mr. McKelvey of Lerner, Sampson & Rothfuss. (*See* Exh. A-5, Doc. 16-5 at 5). Mr. McKelvey indicated in the draft order that it was "submitted" to plaintiffs before it was filed with the court. (*See id.*). Plaintiffs' allegation that Mr. McKelvey misled the court into thinking they had consented to the order because it was marked as "submitted" is implausible. Plaintiffs vociferously objected to summary judgment in the foreclosure proceedings and repeatedly argued that the assignment to U.S. Bank was invalid. (*See* Exh. A-3, Doc. 16-3; Exh. F-1, Doc. 35-1 at 8-34). Thus, plaintiffs' allegation that the proposed order filed by Mr. McKelvey misled the court into thinking plaintiffs agreed that the assignment was valid is unbelievable.

As to plaintiffs' allegation that defendants committed fraud by filing for summary judgment in the foreclosure proceedings, plaintiffs did not rely on the alleged misrepresentation that the assignment was valid. To the contrary, plaintiffs did not accept defendants' representations concerning the validity of the assignment and argued throughout the foreclosure proceedings that the assignment was not valid. (*See* Exh. A-3, Doc. 16-3; Exh. F-1, Doc. 35-1 at 8-34). Because plaintiffs cannot demonstrate that they relied on defendants' alleged

14

misrepresentation that the assignment was valid, they cannot prevail on their fraud claims. *See Burr*, 491 N.E.2d at 1105.

Further, plaintiffs' allegations of fraud premised on the assignment of the mortgage to U.S. Bank are barred by the *Rooker-Feldman* doctrine. In *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415-16 (1923), and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476-87 (1983), the Supreme Court held that lower federal courts lacked jurisdiction to conduct appellate review of state court judgments. In *Feldman*, the Court explained that lower federal courts could not consider claims that were "inextricably intertwined" with a state court's decision. 460 U.S. at 483 n.16, 486-87. Revisiting the scope of the *Rooker-Feldman* doctrine in a more recent decision, the Supreme Court held that the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In the wake of *Exxon Mobil*, the Sixth Circuit held that the *Rooker-Feldman* doctrine does not apply when a plaintiff "asserts *independent claims* that . . . state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means," instead of claiming "an injury caused by the state court judgments" themselves. *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) (emphasis in original).

Here, while plaintiffs claim the state court judgment was obtained by fraud, their fraud claim is not an *independent* claim. *See id.* Instead, plaintiffs raised the same allegations concerning the supposedly fraudulent assignment of the mortgage in the foreclosure proceedings, and the state court considered and rejected those allegations in finding the assignment was valid. (*See* Exh. A-3, Doc. 16-3; Exh. O to Exh. A-3, Doc. 16-3 at 73; Exh. A-4, Doc. 16-4 at 2-4; Exh. F-1, Doc. 35-1 at 8-34). Plaintiffs now ask this Court to review and reject the state court's

15

conclusion that the assignment was valid and not fraudulently obtained. This Court is barred from doing so under *Rooker-Feldman*. *See Exxon Mobil Corp.*, 544 U.S. at 284.

## VI. Injunctive Relief

Plaintiffs also allege a "claim" for injunctive relief. However, injunctive relief is not a freestanding claim, but a remedy that may be appropriate in certain circumstances where plaintiffs are successful on an independent claim. *See Huntington Nat'l Bank v. Guishard*, No. 2:12-cv-1035, 2012 WL 5902916, at *6 n.1 (S.D. Ohio Nov. 26, 2012) ("An injunction . . . is not a cause of action, but a remedy."). Here, as described above, plaintiffs have failed to state a claim for relief on any of their independent claims. Thus, they also cannot prevail on their "claim" for injunctive relief.

## VII. Conclusion

Based on the foregoing, it is **RECOMMENDED** that:

1. defendants' motions to dismiss (Docs. 35 and 37) be **GRANTED**;
2. the pending discovery motions (Docs. 54, 55, 58, and 59) be **DENIED AS MOOT**; and
3. this case be **CLOSED** on the docket of the Court.

**IT IS SO RECOMMENDED.**

Date: 5/17/17

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DERRYN NICOLE JONES, et al.,
　　Plaintiffs,

vs.

U.S. BANK NATIONAL ASSOCIATION, et al.,
　　Defendants.

Case No: 1:16-cv-778
Black, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).